# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| WOOLWORTHS NASHVILLE, LLC D/B/A WOOLWORTH ON 5TH, <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY, THE CINCINNATI CASUALTY COMPANY, AND THE CINCINNATI INDEMNITY COMPANY, <br><br> Defendants. | CASE NO. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Woolworths Nashville, LLC d/b/a Woolworth on 5th ("Plaintiff"), for its Complaint against The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company (the "Defendants"), alleges as follows:

1.  Plaintiff is the owner and operator of a restaurant in Nashville, Tennessee who has been forced, by recent orders issued by the City of Nashville ("City") and the State of Tennessee ("State"), to cease and/or curtail its operations—through no fault of its own—as part of the City and State's efforts to address the COVID-19 crisis. The closures mandated by these orders present an existential threat to small local businesses such as Plaintiff. To protect its business from situations like these, which threaten its livelihood based on factors wholly outside of its control, Plaintiff obtained business interruption insurance from Defendants. In a blatant breach of their insurance obligations that they voluntarily undertook in exchange for Plaintiff's premium payments, Defendants denied Plaintiff's claims arising from the State and City-ordered interruption of its businesses.

1

2. As a result, Plaintiff now brings this action against Defendants for their intentional failure to honor their obligations under commercial businessowners insurance policies issued to Plaintiff, which provide coverage for losses incurred due to a suspension of its operations, including when its business is forced to close due to a government order.

3. On or about March 15, 2020, during the term of the policies issued by Defendants to Plaintiff, and pursuant to a Declaration of Public Health Emergency adopted by the Board of Health for Nashville and Davidson County, the Chief Medical Director for the Metro Public Health Department issued an Order that limited Plaintiff and other restaurants to "half the capacity specified" in its "food service establishment permit" effective March 17, 2020. On March 20, 2020 that Order was amended to prohibit Plaintiff and all other restaurants from "allow[ing] customers to consume food or beverage on the premises until further notice," effective that same day (Metro Order, as amended, attached hereto as **Exhibit 1**).

4. On or around March 22, 2020, and effective beginning March 23, 2020, during the term of the policies issued by Defendants to Plaintiff, the Metro Health Department of Nashville/Davidson County issued a "Safer At Home Order" closing all dine-in restaurant operations in an effort to mitigate the impact of COVID-19, to bend the curve of new infections and to disrupt the spread of the virus, with the goal of saving lives and reducing strain on local healthcare resources ("Safer At Home Order"). The Safer At Home Order remained in effect until May 8, 2020, subject to extension. (Safer At Home Order, as amended attached hereto as **Exhibit 2**). It is unknown at this time when the extensions of these Orders will cease.

5. On or about March 22, 2020, Tennessee Governor Bill Lee issued Executive Order No. 17 that prohibited persons in the State from eating or drinking onsite at restaurants, bars, or other similar food or drink establishments. Although that Order was amended for most parts of

the State by Executive Order No. 29 issued on April 24, 2020 (and effective April 27, 2020), it specifically did not apply to Nashville or Davidson County. On or about March 30, 2020, during the term of the policies issued by Defendants to Plaintiff, Tennessee Governor Bill Lee issued Executive Order #22 which ordered all Tennesseans to stay home unless otherwise engaged in an enumerated essential service/activity to avoid exposure to and the spread of COVID-19. (Said Order and its extension by Executive Order #22 is attached hereto as **Exhibit 3**.) These State and City Orders are hereinafter collectively referred to as the "Closure Orders." The Closure Orders have been modified from time to time, but Plaintiff has remained under their restrictions.

6. As a result of the Closure Orders, Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues and forcing the Plaintiff to furlough or lay off the majority of its employees.

7. Despite Defendants' express promise in their policies to cover their insureds' business interruption losses when a government forces them to close, Defendants began issuing blanket denials to insureds for any losses related to the Closure Orders without first conducting any meaningful coverage investigation, let alone a "reasonable investigation based on all available information" as required under Tennessee law.

8. The speed with which Defendants denied these claims indicate that Defendants already decided and put into place procedures for the blanket denial of claims, regardless of the particular facts of any given insured restaurant.

9. To the extent Defendants provided any reason to Plaintiff for the categorical assertion that Plaintiff's losses are not covered, it is based on the assertion that the "actual or alleged presence of the coronavirus," which led to the Closure Orders that prohibited Plaintiff from

operating its businesses, does not constitute "direct physical loss." *See* Denial Letter attached here as "**Exhibit 4**."

10. But, Defendants' conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Tennessee. Tennessee courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." The physical closing and/or inability of Plaintiff to open due to the Closure Orders also constitutes a physical loss so as to entitle it to coverage under the policy.

11. Moreover, unlike many commercial property policies available in the market, the policies sold by Defendants do not include an exclusion for loss caused by a virus. Thus, Plaintiff reasonably expected that the insurance it purchased from Defendants would and did include coverage for property damage and business interruption losses caused by viruses like the COVID-19 coronavirus.

12. If Defendants wanted to exclude pandemic-related losses under its various insureds' policies—as many other insurers has done in other policies—they easily could have attempted to do so on the front-end with an express exclusion. Instead, Defendants waited until after they collected Plaintiff's premiums, and after a pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to try to limit its exposure on the back-end through their erroneous and improper assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.

13. The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines Defendants' assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property.

4

Case 3:20-cv-00396   Document 1   Filed 05/07/20   Page 4 of 14 PageID #: 4

Indeed, if a virus could never result in a "physical loss" to property, there would be no need for such an exclusion. Moreover, Defendants' assertion ignores the fact that their policies promised to provide coverage for losses incurred due to government actions "taken in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under its policies.

14. Thus, Defendants' wholesale, cursory coverage denials and reservation of rights letters are arbitrary and unreasonable, and inconsistent with the facts and plain language of the issued policies. These denials appear to be driven by Defendants' desire to preempt their own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as Defendants are obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiff in exchange for valuable premiums.

15. As a result of Defendants' wrongful denial of coverage, Plaintiff files this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained, for breach of contract, and for bad faith claims handling.

**PARTIES**

16. Plaintiff Woolworths Nashville, LLC d/b/a Woolworth on 5th is a Tennessee limited liability company, with its principal place of business in Nashville, Tennessee. Plaintiff's members are citizens of Tennessee, Alabama, California, and Florida. Plaintiff operates its business at 221 5th Avenue North, Nashville, Tennessee. Plaintiff has a Businessowners Policy from Defendants, Policy No. ENP0472026, which covers losses for occurrences at that restaurant.

17. Defendants are insurance companies qualified and authorized to do business in the State of Tennessee and are, in fact, engaged in the business of selling insurance contracts to

commercial entities such as Plaintiff in Tennessee and elsewhere. Defendants are incorporated in the State of Ohio and maintains their principal place of business in Ohio.

## JURISDICTION & VENUE

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendants because they are qualified and authorized to do business in Tennessee through the office of the Commissioner of the Tennessee Department of Commerce and Insurance. As such, they have therefore appointed the Commissioner, the Commissioner's Chief Deputy or their successors its true and lawful attorneys upon either of whom all lawful process in any action or legal proceeding against them pursuant to T.C.A. § 56-2-103. In addition, this Court has personal jurisdiction over Defendants because Defendants have submitted to jurisdiction in this state by: (a) transacting business in Tennessee; (b) contracted to insure the Plaintiff located within Tennessee at the time of contracting; and (c) entering into a contract substantially connected within Tennessee.

20. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to its respective rights and obligations under the Policy with respect to the loss of business arising from the Closure Orders detailed in this Complaint.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiff's claims occurred within the Middle District of Tennessee.

6

Case 3:20-cv-00396   Document 1   Filed 05/07/20   Page 6 of 14 PageID #: 6

## FACTUAL ALLEGATIONS

22. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

### A. The Defendants Policies

23. In exchange for substantial premiums, Defendants sold commercial property insurance policies promising to indemnify the Plaintiff for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by a government order, during the relevant time period (each "Policy" and collectively, the "Policies").

24. Each Policy was issued to Plaintiff at its principal place of business in Tennessee.

25. The relevant provisions setting forth the scope of coverage for business interruption losses are the same under each Policy, attached here as "**Exhibit 5**."

26. The Policy is an "all risk" policy that provides broad coverage for losses caused by any cause unless expressly excluded.

27. The Defendants Policies do not exclude losses from viruses or pandemics. Thus, the all-risk Policies purchased by the Plaintiff cover losses caused by viruses, such as COVID-19.

28. In addition to property damage losses, Defendants also agreed to "pay for the actual loss of Business Income" sustained by Plaintiff "due to the necessary suspension" of Plaintiff's operations during the period of business interruption caused by "by direct physical loss of or damage to covered property" at the insured's premises.

29. With respect to business interruption losses, "suspension" means: (1) "the partial slowdown or complete cessation of your business activities"; or (2) "that a part or all of the described premises is rendered untenantable if coverage for Business Income applies."

30. "Business Income" is defined in relevant part under the Policies as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred" plus "continuing necessary operating expenses incurred."

31. Defendants also promised to "pay necessary Extra Expense" Plaintiff incurs during the period of interruption that it "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises."

32. "Extra Expense" is defined in relevant part under the Policies as any expense incurred (1) "to avoid or minimize the suspension of business and to continue operations at the described premises"; (2) "[t]o minimize the suspension of business if [Plaintiff] cannot continue operations"; or (3) "to [r]epair or replace any property[.]"

33. The Defendants Policies also include "Civil Authority" coverage, pursuant to which Defendants promised to pay for the loss of Business Income and necessary Extra Expense sustained by Plaintiff "caused by action of civil authority that prohibits access" to Plaintiff's insured premises.

34. This Civil Authority coverage is triggered when any non-excluded cause results in "damage to property other than property" at the Plaintiff's premises, and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions."

**B. The Plaintiff's Losses Due to the Coronavirus Pandemic and the Closure Orders.**

35. On March 11, 2020, the World Health Organization, an organization funded primarily by the U.S. Government, declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19 - constituted a global pandemic.

36. Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a

characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

37. The continuous presence of the coronavirus on or around Plaintiff's premises has rendered the premises unsafe and unfit for its intended use and therefore caused physical property damage or loss under the Policies.

38. The Closure Orders, which closed all "non-essential" businesses in Tennessee, including all restaurants and movie theaters, likewise was made in direct response to the continued and increasing presence of the coronavirus on property on or around Plaintiff's premises.

39. Like the March 15, 2020 Closure Order, the March 30, 2020 Order prohibited the public from accessing Plaintiff's restaurant, thereby causing the necessary suspension of its operations and triggering the Civil Authority coverage under the Policies.

40. As a result of the Closure Orders, the Plaintiff has suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiff and owed under the Policies is increasing every day. As a result of these catastrophic losses, Plaintiff has been forced to furlough its workers and may have to close some or all of its locations permanently.

41. Following the March 15, 2020 Closure Order, the Plaintiff promptly reported the loss to Defendants and Defendants assigned claim number 3522387 thereto (the "Claim") requesting coverage for its business interruption losses promised under the Policies (collectively, the "Closure Order Claims").

42. Defendants have responded with a standard reservation of rights letter that is a *de facto* denial of each of the Closure Order Claims. Although styled as "Reservation of Rights," Defendant's letter dated March 20, 2020 is simply a prelude to an ultimate denial of the Claim.

9

The letter states that "… the fact of the pandemic, without more, is not direct physical loss or damage to property at the premises." The letter goes further and states that the business income and extra expense provisions of the Policy likewise require a direct physical loss to property at the premises and again references the earlier assertion that the pandemic does not qualify. Finally, the letter likewise indicates a conclusory denial under the civil authority coverage. Defendants also requested additional information beyond the scope required by the Policy and beyond what is reasonably necessary to evaluate Plaintiff's coverage. Upon information and belief, Defendants have uniformly refused to pay its insureds under its standard policy for losses related to COVID-19.

## COUNT I: DECLARATORY JUDGMENT

43. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in the foregoing paragraphs.

44. Each Policy is an insurance contract under which Defendants were paid premiums in exchange for their promises to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing it to close its business.

45. Plaintiff has complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

46. Defendants have arbitrarily and without justification refused to reimburse Plaintiff for any losses incurred by Plaintiff in connection with the covered business losses related to the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

47. An actual case or controversy exists regarding Plaintiff's rights and Defendants' obligations under the Policies to reimburse Plaintiff for the full amount of losses incurred by

Plaintiff in connection with Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

48. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment from this Court declaring the following:

(a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

(b) Defendants waived any right they may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Tennessee law; and

(c) Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the indemnity period and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

## COUNT II: BREACH OF CONTRACT

49. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth in the foregoing paragraphs.

50. Each Policy is an insurance contract under which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing it to close its business.

51. Plaintiff has complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Defendants have abrogated their insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

52. By denying coverage for any business losses incurred by Plaintiff in connection with the Closure Orders and the COVID-19 pandemic, Defendants breached their coverage obligations under the Policies.

53. As a result of Defendants' breaches of the Policies, Plaintiff has sustained substantial damages for which Defendants is liable, in an amount to be established at trial.

54. Defendants' breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. <u>See, e.g.</u>, <u>Riad v. Erie Ins. Exchange</u>, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendants intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was clear; (2) refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information; (3) unjustly refused to pay Plaintiff's claim for their own financial preservation with no reasonable or justifiable basis; (4) refused and failed to obtain all reasonably available information and generally ignored Plaintiff's claim; (5) failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under the insurance policies; (6) failed to treat Plaintiff's interests equal to that of their own; (7) filed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (8) misrepresented facts and/or provisions of the Policy relating to coverage of the Loss; (9) engaged in premature and outcome determinative decision-making process engineered to result in the ultimate denial of Plaintiff's Claim even prior to Plaintiff making said Claim; and (10) engaged in such other acts toward Plaintiff that are contrary to the duties owed to Plaintiff as established by the customs and practices in the industry, the law, and the Policy. Defendants knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy.

Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendants consciously refused to compensate Plaintiff for its losses, and withheld monies and benefits rightfully due Plaintiff. In so acting, Defendants intended to and did injure Plaintiff in order to protect their own financial interests and should be punished. Plaintiff seeks, and is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that the Court:

1. Enter a declaratory judgment in favor of Plaintiff and against Defendants, declaring as follows:

   (a) Plaintiff's losses incurred in connection with the Closure Orders and the necessary interruption of its businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

   (b) Defendants waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's losses by issuing blanket coverage denials without conducting a claim investigation as required under Tennessee law; and

   (c) Defendants are obligated to pay Plaintiff for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the indemnity period and the necessary interruption of its businesses stemming from the COVID-19 pandemic.

2. Enter a judgment on Count II of the Complaint in favor of Plaintiff and against Defendants and award damages for breach of contract in an amount to be determined by the jury;

3. Enter an award for punitive damages in an amount the jury may find appropriate;

4. Enter a judgment in favor of Plaintiff and against Defendants in an amount equal to all attorneys' fees and related costs incurred for the prosecution of this coverage action against Defendants, which amount to be established at the conclusion of this action;

5. Award to Plaintiff and against Defendants prejudgment interest, to be calculated according to law, to compensate Plaintiff for the loss of use of funds caused by Defendants' wrongful refusal to pay Plaintiff for the full amount in costs incurred in connection with Closure Order Claims.

6. Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ T. Roe Frazer II*
T. Roe Frazer II; No. 35785
Patrick D. McMurtray; No. 31597
Thomas Roe Frazer III; No. 33296
FRAZER PLC
30 Burton Hills Blvd., Suite 450
Nashville, TN 37215
Telephone: (615) 647-6464
Facsimile: (866) 314-2466
roe@frazer.law
patrick@frazer.law
trey@frazer.law

*Attorneys for Plaintiff*