IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

| | | |
|---|---|---|
| WOOLWORTHS NASHVILLE, LLC,<br>d/b/a Woolworths on 5th, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:   3:20-cv-00396 |
| THE CINCINNATI INSURANCE COMPANY,<br>THE CINCINNATI CASUALTY COMPANY, and<br>THE CINCINNATI INDEMNITY COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

_____

## THE CINCINNATI DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

_____

Defendants, The Cincinnati Insurance Company ("Cincinnati"), The Cincinnati Casualty Company and The Cincinnati Indemnity Company (collectively "Cincinnati"), by their attorneys, submit herewith this Memorandum In Support Of Their Motion To Dismiss pursuant to Fed. R. Civ. P 12(b)(6), on the basis that the Plaintiff fails to state a claim upon which relief may be granted.

## <u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>

The Policies at issue supply property insurance coverage. They are designed to indemnify loss or damage to property, such as in the case of a fire or storm. Coronavirus (or "COVID-19") does not damage property; it hurts people. Plaintiff demands the Policies' Business Income, Extra Expense and Civil Authority coverages. But, because they are part of a property insurance policy, these coverages protect Plaintiff only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease. *See*

*Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612, 617 (E.D. Va. 1999) (the "direct physical loss" language in the policy provides a further limitation on the types of loss covered). *See also Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 68 (8th Dist) (Stewart, J.).

The Plaintiff's allegations actually establish that it has not sustained any losses attributable to direct physical loss to property, and thus has not sustained a covered loss under the Policies. Instead, Plaintiff alleges that the pandemic spreads COVID-19 among humans. Moreover, the same direct physical loss requirement applies to all the coverages for which Plaintiffs sue. Thus, it applies to the Civil Authority coverage as well as the Business Income coverage.

Plaintiff does not sufficiently plead its claim. It merely states labels and conclusions about direct physical loss. But, there must be factual allegations showing direct physical loss and there are none. At bottom, Plaintiff bears the initial burden of showing actual direct physical loss to property. This is always necessary to make a *prima facia* case for property insurance coverage. Because Plaintiff fails to allege direct physical loss, Plaintiff's Complaint should be dismissed.

## ARGUMENT

## I.   BACKGROUND FACTS AND GENERAL INSURANCE LAW PRINCIPLES.

### A.   Allegations Of The Complaint.

The Complaint includes the following allegations:

- Plaintiff is a limited liability company that owns and operates a restaurant at 221 5th Avenue North in Nashville. [Dkt. No. 1, ¶¶ 1, 16]

- Plaintiff purchased a policy of insurance from Cincinnati providing Business Income Coverage, Civil Authority Coverage and Extra Expense coverage. [Dkt. No. 1, ¶¶ 25-34]

- Plaintiff has been subject to certain "closure orders" that have limited the number of people who could dine-in at the restaurant, and thereafter limited Plaintiff to providing only carry-out food and beverage service and prohibited Plaintiff from

2

providing dine-in food and beverage service. Other closure orders required people to stay at home unless engaged in essential activities. [Dkt. No. 1, ¶¶ 3-5]

● "Like the March 15, 2020 Closure Order, the March 30, 2020 Order prohibited the public from accessing Plaintiff's restaurant, thereby causing the necessary suspension of its operations and triggering the Civil Authority coverage under the Policies." [Dkt. No. 1, ¶ 37]

● "As a result of the Closure Orders, Plaintiff has been forced to halt ordinary operations, resulting in substantial lost revenues and forcing the Plaintiff to furlough or lay off the majority of its employees." [Dkt. No. 1, ¶ 6]

● Defendants began issuing blanket denials to insureds for any losses related to the Closure Orders, and Cincinnati breached its insurance contract and acted in bad faith by having denied coverage for Plaintiff's COVID-19 related losses. [Dkt. No. 1, ¶¶ 7, 50-54]

● "The physical closing and/or inability of Plaintiff to open due to the Closure Orders also constitutes a physical loss so as to entitle it to coverage under the policy." [Dkt. No. 1, ¶ 10]

● "[T]he policies sold by Defendants do not include an exclusion for loss caused by a virus." [Dkt. No. 1, ¶ 11]

● "The Defendants Policies do not exclude losses from viruses or pandemics. Thus, the all-risk Policies purchased by the Plaintiff cover losses caused by viruses, such as COVID-19." [Dkt. No. 1, ¶ 27]

● "Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures." [Dkt. No. 1, ¶ 36]

**B.      The Cincinnati Policy.**

    **1.      The Policy And The Coverage.**

Cincinnati issued a policy of insurance to Woolworths Nashville, LLC, Policy No. ENP

047 20 26, effective from January 11, 2020 to January 11 18, 2021 ("the Policy" or "the Cincinnati

Policy").[1] For present purposes, the pertinent parts of the Policy are form FM 101 05 16 (Dkt No.

---

[1] Plaintiff attached a partial copy of the policy to the Complaint. Attachments to the complaint are considered to be part of the complaint. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

1-5, electronic page Nos. 22-61), and form FA 213 05 16 (Dkt. No. 1-5, electronic page No. 73-81).[2] Form FM 101 05 16 is the main property coverage form. Form FA 213 05 16 extended Business Income coverage. Using the same language, each form supplies Business Income coverage, Civil Authority coverage, and Extra Expense coverage.

Under Tennessee law, an insurance policy is generally to be interpreted as any other contract. *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). In construing an insurance contract, "the language of the policy should be given its plain and ordinary meaning." *Burdett Oxygen Co. of Cleveland, Inc. v. Employers Surplus Lines Ins. Co.*, 419 F. 2d 247, 248 (6th Cir. 1969). The court must read the insurance contract as a layperson would read it. *Paul v. Ins. Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984). Further, "the contract should be read as a whole and each word given its appropriate meaning, if possible." *Burdett Oxygen Co. of Cleveland, Inc.*, 419 F. 2d at 248; *Mid–South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F.Supp. 522, 526 (W.D. Tenn. 1993).

The only issue in this case is whether the losses claimed by Plaintiff fall within the coverage provided by the Policy. Plaintiff, like any claimant under a policy, has the initial burden of proving that a loss comes within the terms of the policy. *Blaine Constr. Corp. v. Ins. Co. of N. Am.*, 171 F. 3d 343, 349 (6th Cir. 1999). The interpretation of an insurance contract is a matter of law to be determined by the court. *Black v. State Farm Mut. Auto. Ins. Co.*, 101 S.W.3d 427, 428 (Tenn. Ct. App. 2002). Thus, the issues in this Motion to Dismiss are particularly appropriate for resolution at this time.

## 2. The Direct Physical Loss Requirement.

---

[2] Dkt. No. 1-5 is a partial copy of the Policy that Plaintiffs attached to the complaint. Using the Adobe pdf. "electronic page" number on Dkt. No. 1-5 is the easiest way to locate the referenced policy forms and provisions.

4

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiff's. The requirement appears in multiple places. For example, direct physical loss to the Plaintiff's property is required for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

[Dkt. No. 1-5, electronic page No. 89] The term "loss" is defined to mean ***physical*** loss or damage. [Dkt. No. 1-5, electronic page 59, 97] [emphasis added] Accordingly, direct physical loss is required for Business Income coverage. This requirement is plainly stated throughout the policy and these words are not ambiguous.

### 3.  The Requirement That There Be A Covered Cause Of Loss.

The requirement of direct physical loss additionally appears in the Covered Cause of Loss threshold requirement for any coverage:

> SECTION A. COVERAGE
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

[Dkt. No. 1-5, electronic page No. 24]

Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." [Dkt. No. 1-5, electronic page No. 26] As stated, "loss" is defined, in relevant part, as physical loss or damage. [Dkt. No. 1-5, electronic page No. 97]. Accordingly, direct physical loss is a necessary element of Covered Cause of Loss. As discussed in more detail below, Civil Authority coverage applies when a "Covered Cause of Loss causes damage to property other than Covered Property at a 'premises'." Therefore, because direct physical loss is an element of Covered Cause of Loss, a Plaintiff must establish direct physical loss in order to

meet its burden of establishing that the Civil Authority coverage applies. The same applies to the Extra Expense coverage because it too requires physical loss for the coverage to apply. [Dkt. No. 1-5, electronic page No. 40, 89]

### 4. The Presence Or Absence Of Exclusions Is Irrelevant Unless Plaintiff First Establishes That The Loss Falls Within The Terms Of The Coverage.

Plaintiff points out that the Policy lacks any exclusion explicitly referencing viruses and argues that this is evidence that losses from a virus were intended to be covered. [Dkt. No. 1-5, ¶¶ 11, 27]. Not true. The law is clear that the policyholder bears the initial burden of demonstrating the alleged "loss" falls within the policy. *Blaine Constr. Corp.*, 171 F.3d 343 at 349. The presence or absence of an exclusion addressing a specific condition, such as a virus, does not shed any light on whether there has been "direct 'loss'" in the first instance. Exclusions do not create coverage. Rather, exclusions should also be read ad seriatim such that each exclusion reduces coverage and operates independently with reference to the insuring agreement. *Standard Fire Insurance Company v. Chester -O'Donley & Associates, Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998) (applying Kentucky substantive law). *See also, Mastellone,* 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, at ¶¶ 61-69; *and Zinser v. Auto-Owners Ins. Co.*, 12th Dist. Butler No. CA2016-08-144, 2017-Ohio-5668, ¶ 33 (Powell, J., concurring and dissenting in part) ("[S]ince I would find the AC units are not covered property under the policy, any further analysis of the policy's exclusions and limitations is unnecessary.").

### 5. The Requirements Of The Civil Authority Coverage.

In addition to the direct physical loss requirement, Civil Authority coverage requires that an insured suffer actual loss of Business Income caused by the specific actions of a civil authority. This coverage is only provided if both of the following apply:

6

(a) **Access** to the area **immediately surrounding** the damaged property **is prohibited** by civil authority as a result of the damage; and

(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the **Covered Cause of Loss** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[Dkt. No. 1-5, electronic page No. 40, 90] [emphasis added] Accordingly, Civil Authority coverage requires both direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

## II.    MOTION TO DISMISS STANDARD.

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F. 3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F. 3d 272, 275–76 (6th Cir. 2010)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F. 3d 239, 246–47 (6th Cir. 2012)). Stated differently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). [internal quotations omitted]

In addition, the defendant may also rely on the exhibits attached by the plaintiff to the complaint when evaluating a motion to dismiss to show the plaintiff is not entitled to relief.

7

*Rondigo, LLC v. Township of Richmond*, 641 F. 3d 673, 681 (6th Cir. 2011). Specifically, the court can consider insurance policies attached to or referenced in the complaint when ruling on a Rule 12(b)(6) motion. *Valley Creek Land & Timber v. Colonial Pipeline Co.*, 432 F.Supp.3d 1360, 1363 (11th Cir. 2020). Considering documents that are central to the complaint does not change a motion to dismiss into a motion for summary judgment when the documents are undisputed in their authenticity. *Id*. In this case, therefore, the court can and should consider the Closure Orders and the partial copy of the Policy attached to the complaint, because they are central to the complaint and their contents and authenticity are not in dispute.

Where, the Complaint's allegations are in conflict with the terms of the Policy and the Closure Orders, the terms of the Policy and the Closure Orders control. *See, e.g*., 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller) ("It appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.") (collecting cases).

In deciding a 12(b)(6) motion, courts have said that they accept the truth of "facts," "material facts," "well-pleaded facts," and "well-pleaded allegations," but they do not accept "legal conclusions," "unsupported conclusions" or "sweeping legal conclusions cast in the form of factual allegations." 5A WRIGHT & MILLER, supra note 3, § 1357, at 311-318. These standards are important as applied to this case, because as discussed below, Plaintiff has not adequately alleged direct physical loss. Thus, the principles articulated in *Iqbal, Twombly, Blaine, D'Ambrosio, Republic Bank* and WRIGHT & MILER are not fulfilled. Plaintiff glosses over the

necessary requirement of direct physical loss by pleading unsupported, sweeping conclusions. These conclusions do not "move the needle" and should be ignored.

III.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE IT DOES NOT ALLEGE DIRECT PHYSICAL LOSS.

A.   The Complaint Does Not Allege Direct Physical Loss To Plaintiff's Premises.

Plaintiff does not allege facts showing any direct physical loss. The alleged facts simply do not show direct physical loss. There are no allegations of a physical or structural alteration of Plaintiff's property. Rather, the Complaint alleges only "threadbare recitals" and "formulaic recitations." This is woefully insufficient given the pleading requirements mandated in cases like *Twombly* and *Iqbal.* Since Plaintiff does not allege any facts that sustain the claim, it cannot possibly prove its claim. *See Mastellone,* 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130, at ¶ 68.

*Mastellone*, is very close, factually, to the present case. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policy. It too required "direct physical loss," also referred to in *Mastellone* as physical injury to property. *Id.* at ¶¶ 61-62. *Mastellone* holds that mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity. In this context, *Mastellone* rejected the argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Id.* at ¶¶ 61-69. *Mastellone* relies on a leading insurance treatise: "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of

9

the property". 10A *Couch on Ins.* § 148:46 (3d Ed.1998). Accordingly, the *Mastellone* court found there was no coverage.

Here, the supposed presence of COVID-19 did not affect the structural integrity of the property. The loss Plaintiff alleges is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiff's building or someone else's property. Indeed, the Complaint admits that premises where the virus has been confirmed to be present, such as hospitals and nursing homes, have remained open. [Dkt. No. 1-2, electronic page Nos. 3, 5; Dkt. No. 1-3, p. 7] These properties remain open because, like Plaintiff's premises in this case, they are themselves undamaged.

Moreover, even if COVID-19 could cause direct physical loss to the premises, which it cannot, Plaintiff again makes only "labels and conclusions" and "conclusory allegations" that COVID-19 was ever on its premises at all. The only time the Complaint asserts that COVID-19 was ever on Plaintiff's premises is in Paragraph 37, which alleges "[t]he continuous presence of the coronavirus on or around Plaintiff's premises has rendered the premises unsafe and unfit for its intended use and therefore caused physical property damage or loss under the Policies." [Dkt. No. 1, ¶37] The vague, amorphous and non-specific reference to "the continuous presence of the coronavirus *on or around* Plaintiff's premises" constitutes an "unwarranted factual inference, a "formulaic recitation of the elements of [Plaintiff's] cause of action," and a "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements" -- all in violation of *Iqbal, Twombly* and *D'Ambrosio*. To satisfy the well-established pleading requirements of these cases, Plaintiff must plead the factual basis for its assertion that COVID-19 is *on or around* Plaintiff's premises". Plaintiff has not done so. The Court should accordingly dismiss Plaintiff's

10

Complaint on the basis that, even assuming that COVID-19 causes direct physical loss, plaintiff has not adequately pleaded it was ever on Plaintiff's premises to begin with.

Moreover, even if present on Plaintiff's premises, the Complaint admits that, like the mold in *Mastellone*, the Centers for Disease Control (CDC) recognizes that COVID-19 can be removed by cleaning affected surfaces. "WHEREAS" Plaintiff admits, "the CDC advises that . . . the following health guidelines . . . should be followed: (2) . . . disinfecting frequently used items and surfaces as much as possible." [Dkt. No. 1-3, p. 2] For this reason, Plaintiff further admits that "essential businesses" that are not subject to the Closure Orders include companies providing supplies for essential business operations, including "chemicals, soaps, and detergent (Dkt. No. 1-3, pp. 10-11, ¶ 20), and "non-grocery products and products necessary to maintaining . . . sanitation." [Dkt. No. 1-3, p. 9, ¶6] These admissions are consistent with the position of the CDC, which has instructed that the Coronavirus can be wiped off surfaces by cleaning. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." *See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached hereto as Ex. A; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed May 28, 2020).[3]

Thus, as in *Mastellone*, even if Plaintiff had alleged there is actual presence of the Coronavirus on the surfaces of Plaintiff's restaurant, the Complaint fails to allege direct physical loss. The Complaint admits the virus either dies naturally in days, or it can be wiped away. Thus,

---

[3] A court may take judicial notice of the contents of public records, such as state court proceedings, without converting a motion to dismiss into a summary judgment motion. *Johnson v Spencer*, 950 F.3d 680, 705 (11th Cir. 2020); *Collier v. Buckner*, 303 F.Supp.3d 1232, 1258, f/n 24 (M.D. Ala. 2018) (*citing Horne v. Potter*, 392 Fed.Appx. 800, 802 (11th Cir. 2010)).

the Complaint's allegations fall squarely within *Mastellone's* holding that an organic substance on a surface is not direct physical loss as a matter of law when it can be wiped away. And here, if not wiped away, the virus dies naturally within hours or days. Stated differently, the Complaint makes "threadbare recitals" and "formulaic recitations" of direct physical loss *in violation of* the pleading requirements articulated in *Twombly* and *Iqbal*, but it fails to allege facts that "raise a right to relief" and "state a plausible claim for relief" *as required by Twombly* and *Iqbal*. In essence, the Complaint seeks recovery for the presence of a cleanable organic substance that *Mastellone* holds is not direct physical loss as a matter of law. As discussed in the following paragraphs, *Mastellone* does not stand alone in this regard.

Furthermore, the Complaint "dances around" the direct physical loss issue. It does not assert damage to the structural integrity of the property. Instead, it asserts that the "physical closing and/or inability of Plaintiff to open due to the Closure Orders . . . constitutes a physical loss so as to entitle it to coverage under the policy." [Dkt. No. 1, ¶ 10]. Plaintiff does not allege a direct physical loss that would "raise a right to relief" and "state a plausible claim for relief" as required by *Twombly* and *Iqbal*. Direct physical loss is not, as a matter of law, established by an organic substance that allegedly is "on or about" the property, that allegedly denies use of the property or that causes a suspension of operations at the property. In the final analysis, the complaint does not allege direct physical loss, and consequently there is no Business Income Coverage.

### B. American Case Law Is Overwhelmingly Consistent With Cincinnati's Position Here.

No case, in Tennessee, or elsewhere, has held that a virus constitutes direct physical loss. By contrast, *Mastellone* is not alone in holding that direct physical loss requires actual, tangible, permanent, physical alteration of property. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, *is widely held* to

exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." [emphasis added].

*Source Food Technology, Inc. v. U.S. Fidelity & Guarantee Co.,* 465 F. 3d 834, 838 (8th Cir. 2006) (Minn.), is one of many cases that is to the same effect as *Mastellone*. There, the U.S. government imposed an embargo on the import of Canadian beef following the detection of Mad Cow Disease in Canadian cattle. Despite no evidence that *its* beef was contaminated, Source Food could not import it into the U.S. because of the embargo. It claimed lost business income under its insurance policy, which, like the policy here, provided coverage if the suspension of business operations was "caused by ***direct physical loss to Property***". *Id.* at 835. Source Food argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. *Source Food* rejects this argument. "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property," the court held, "would render the word 'physical' meaningless." *Id.* at 838. In essence, the loss of the opportunity to use property does not render the property itself damaged, broken, dysfunctional or incapable of being used.

Similarly, *Philadelphia Parking Authority v. Federal Insurance Co.,* 385 F.Supp.2d 280, 289 (S.D.N.Y. 2005), holds that there was no direct physical loss to an airport parking facility that had to close on September 11, 2001 due to the terrorist attacks. *See also Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.,* 400 F. 3d 613, 616 (8th Cir. 2005); *City of Burlington v. Indem. Ins. Co. of N. Am.,* 332 F. 3d 38, 44 (2d Cir. 2003); *N.E. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co.,* 2014 WL

12480022, at *7 (N.D. Ga. May 23, 2014); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780 (2010).

Furthermore, *Mastellone* states a majority view with its holding that where property can be cleaned, it is not physically damaged. *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[w]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012). *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15 (the Coronavirus damages lungs; not printing presses.)[4]

In sum, the cases nationally demonstrate that the presence of the virus in the community is not direct physical loss to property.

### C.    Tennessee Law Is Consistent With *Mastellone* And The Cases Nationally.

Tennessee cases are consistent with the law nationally, such as *Mastellone.* The phrase "direct physical" modifies <u>both</u> the terms "loss of" and "damage to" covered property. *S.E. Mental Health Ctr., Inc. v. P. Ins. Co., Ltd.*, 439 F.Supp.2d 831, 837 (W.D. Tenn. 2006). Thus, whether the Court is considering whether there has been a "loss of" covered property, such consideration must focus on the "physical" nature of the loss. In addition, the word "direct" indicates "'immediate' or 'proximate' cause, as distinct from remote or incidental causes." *Universal Image Productions, Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569, 573 (6th Cir. 2012).

---

[4] No written opinion has been issued in *Social Life* at the time of filing this brief. A copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit B. The Court also takes judicial notice of information accessible via the Public Access to Court Electronic Records ("PACER") internet database link to the Official Court Electronic Document Filing System. *Termarsch v. Agent Mortgage Co.*, 2008 WL 1776592, *4, f/n 6 (M.D. Fla. 2008).

The term "physical" means "pertaining to real, tangible objects." *Black's Law Dictionary* (11th ed. 2019). In the insurance context, the "requirement that the loss be 'physical,'" is "widely held" to "preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A Steven Plitt, *et al*. *Couch on Insurance* § 148:46 (3d ed. 1995). As shown, there is no Tennessee case addressing whether the presence of a virus is direct physical loss. But, the proposition that there must be a "distinct, demonstrable, physical alteration" prevails in many jurisdictions. *See e.g., Universal Image Prods., Inc*., 475 Fed. Appx. at 573 (requirement of "direct physical loss" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co*., 115 Cal. Rptr. 3d 27, 37 (Cal. App. 2d Dist. 2010) ("A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'", *citing and quoting AFLAC Inc. v. Chubb & Sons, Inc.* (2003) 260 Ga. App. 306, 581 S.E.2d 317, 319.

### D. Plaintiff's Arguments About The Virus Exclusion Fail Because There Is No Direct Physical Loss.

Plaintiffs claim that coverage exists because the Policies do not contain a virus exclusion. Plaintiff alleges: "[d]efendants Policies do not exclude losses from viruses or pandemics. Thus, the all-risk Policies purchased by the Plaintiff cover losses caused by viruses, such as COVID-19." [Dkt. No. 1, ¶ 27]. Plaintiff is legally incorrect. As established, the insured policyholder bears the initial burden of demonstrating the alleged "loss" falls within the policy. *Blaine Constr. Corp.*, 171 F. 3d at 349. That means that in this case Plaintiff must plead and prove that it incurred direct physical loss to property at its premises. An exclusion can theoretically become relevant only if

Plaintiffs first meet their burden of showing that there is direct physical loss. As established, Plaintiffs cannot do so. Thus, Plaintiffs cannot fulfill the threshold requirement of a direct physical loss.

The basic principle that a direct physical loss must be established before an exclusion can even be pertinent is well-established in the law. *See e.g. Hartford Life & Acc. Ins. Co.*, 2006 WL 2801878, *13 (M.D. Fla. 2006)( "[u]pon a finding that McClurg's death was not a loss covered by the policy, it is unnecessary for the court to determine whether the intoxication exclusion applies to exclude coverage."); *Buce v. Allianz Life. Ins. Co.,* 247 F. 3d 1133, 1149, f/n 7 (11th Cir. 2001); *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co*., 114 Cal. App. 4th 548, 555, f/n 5, 7 Cal. Rptr. 3d 844, 850 (2003); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 333 (S.D.N.Y. 2014); *Roundabout Theatre Co. v. Cont'l Cas. Co*., 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002); *Zinser v. Auto-Owners Ins. Co.,* 2017-Ohio-5668, ¶ 33 (Ohio App.). Thus, in *Ward Gen.*, a law firm closed because of a power outage. The loss of power was not a direct physical loss. *Ward Gen.*, 114 Cal. App.4th at 555.. Because there was no direct physical loss, it was unnecessary to decide whether a flood exclusion applied. *See also*Similarly, in *Newman*, there was a database crash. There was no direct physical loss. Therefore, it was "unnecessary to analyze the various exclusions and their application to this case." *Newman,* 14 F. Supp.3d at 9.

In sum, there is no coverage here because there is no direct physical loss. For that reason, no exclusion is needed.

## IV.    THERE IS NO CIVIL AUTHORITY COVERAGE.

### A.    The Allegations Of The Complaint Fail To Satisfy The Civil Authority Coverage.

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiff's property. Even then, there is only Civil Authority coverage if additional requirements are met. These include the following requirements: a) access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. [Dkt. No. 1-5, electronic page No. 40, 90] "[L]osses due to curfew and other such restrictions are not generally recoverable. * * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

### B.     There Is No Direct Physical Loss To Other Property Even Alleged.

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiff's property is necessary. Courts nationwide have upheld that requirement. *See Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, 2004 WL 5704715, at *1-2, *6 (N.D. Ga. Dec. 15, 2004) (holding that there was no coverage in part because the FAA's order that grounded planes after September 11th was not a "direct result" of property damage); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as COVID-19 is not causing direct physical loss to Plaintiff's premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical

loss anywhere. Rather, it alleges COVID-19 and related Closure Orders have required its business to cease or reduce operations. No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property. This fails to meet the standard set in *D'Ambrosio*, *Twombly* and *Iqbal*. Instead, the closing or limiting of business operations protected the public from human to human transmission of the virus.

There are no alleged facts showing any direct physical loss anywhere. There are no alleged facts showing any change or alteration of anybody's physical property. There are, however, as admitted in the Complaint, facts showing that COVID-19 can be removed via cleaning. As established, this is the marker of something that is ***not*** direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

C.    **The Complaint Fails To Allege The Requisite Prohibition of Access Necessary For The Civil Authority Coverage To Apply.**

The Civil Authority coverage requires that access to Plaintiff's premises be prohibited by an order of Civil Authority. But, none of the government orders attached to Plaintiff's Complaint "prohibit" access to its premises. The Civil Authority clause addresses the prohibition of access, not of use. *See Davidson Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 136 F.Supp.2d 901, 912 (W.D. Tenn. 2001). While there is no Tennessee precedent discussing the "Civil Authority" clause, cases across the country recognize that this language is not triggered where a policyholder's premises is only rendered less accessible but not fully "prohibited." *See S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F. 3d 1137, 1139-41 (10th Cir. 2004) . In *S. Hospitality*, the grounding of flights after September 11th made it more difficult for customers to access plaintiff's hotels but did not "prohibit access" to them. Accordingly, there was no civil authority coverage. *S. Hospitality*, 393 F. 3d at 1139.

18

To the same effect is *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, at \*4–5 (M.D. La. Aug. 29, 2007). *Kean, Miller* holds that there was no civil authority coverage where the insured closed its business as the result of actions by civil authorities related to Hurricane Katrina coming ashore.

> [T]he Court located several cases from other jurisdictions, and in each of those cases, the court determined that the [Civil Authority Clause] at issue was unambiguous and further held that coverage did not exist under such a clause unless the action of civil authority ***actually* and *completely*** prohibited access to the insured premises. For example, in *Southern Hospitality, Inc. v. Zurich American Ins.,* 393 F. 3d 1137 (10th Cir.2004), certain insured hotel operators brought suit against their insurer for denying their claims for loss of business income sustained when customers of their hotels canceled visits due to cancellation of airline flights by the Federal Aviation Administration ("FAA") in the wake of the 9/11 attack. The hotel operators relied upon an identical Civil Authority Clause to that in the present case. The court held that there was no dispute that the FAA's order prohibiting the flying of airplanes qualified as an "action of civil authority." However, even though the order stopped the flying of airplanes, it did not "prohibit access" to hotel operations. The court explained that the plain and ordinary meaning of the phrase "prohibits access" is to "formally forbid, esp. by authority" or to "prevent." Thus, in order for the Civil Authority Provision to apply to the hotel operations, it would have to formally and directly forbid or prevent those operations, rather than tangentially affect them. In other words, the court determined that there must be a "direct nexus" between the civil authority order/action and the suspension of the insured's business for the Civil Authority Provision to apply, and because the FAA's order grounding flights did not itself "prevent, bar, or hinder access to" the plaintiff's hotels, coverage did not exist.

*Kean, Miller,* 2007 WL 2489711, at \*4–5 (emphasis added).

While the Complaint alleges that "the March 30, 2020 Order prohibited the public from accessing Plaintiff's restaurant, thereby causing the necessary suspension of its operations and triggering the Civil Authority coverage under the Policies" (Dkt. No. 1, ¶ 37), this allegation is inconsistent with the terms of the Closure Orders themselves. As discussed, where the Complaint's allegations are in conflict with the terms of the Policy and the Closure Orders, the terms of the Policy and the Closure Orders control. *See, e.g.*, 5 Charles Alan Wright & Arthur R. Miller,

19

Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller). By attaching the Closure Orders to the Complaint, Plaintiff admits that the Closure Orders did not prohibit the public or Plaintiff from accessing to the establishment. Plaintiff has effectively admitted it could offer drive-through, pickup, carry-out, or delivery service for food or drink. [Dkt. No. 1, ¶¶ 3-5] Plaintiff could also perform the "minimum necessary activities required to maintain any business or organization." [Dkt. No. 1-3, p. 12, ¶ 30] Thus, because Plaintiff could still access the premises, coverage under the "Civil Authority" provision is not triggered. Therefore, Plaintiff has failed to state a claim to which it is entitled to relief and this Court should grant the Motion to Dismiss.

Similarly, there is no Civil Authority coverage when the government order keeps people confined to their homes. *See Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *Brothers, Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970). In *Syufy*, there was a curfew to prevent rioting. Still, there was no civil authority coverage because access to the insured premises, a movie theater, was not prohibited. In *Brothers*, a curfew was ordered because of riots. However, although the curfew prevented a restaurant's customers from being out and about, it did not prohibit access to the restaurant's premises. The curfew orders in *Syufy* and *Brothers, Inc.* are analogous to the stay at home order issued in Tennessee.

Furthermore, access to premises must be prohibited, not just limited, as for example, access being limited to carry out food and beverage service in this case. *See Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of Am.*, 2015 WL 13547667, at *6 (N.J. Super. L. July 24, 2015); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). In *Schultz*, there were serious traffic issues in lower Manhattan following Superstorm Sandy. Nevertheless, there was no civil authority coverage because it was not completely impossible for the public to access the insured store. In *Ski Shawnee*, a bridge repair hindered or dissuaded the

20

majority of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, at *12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005).

Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply. Therefore, Plaintiff has failed to state a claim to which it is entitled to relief and this Court should grant the Motion to Dismiss.

## CONCLUSION

For the reasons established above, Cincinnati respectfully requests that its Motion to Dismiss be granted.

Dated this [6th] day of July, 2020.

Respectfully submitted,


_s/ Curtis L. Campbell_____
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
**E. JASON FERRELL**
Registration No. 24425
DIRECT: (615) 630-7716
(615) 256-8787, Ext. 116
jferrell@bkblaw.com
**CURTIS L. CAMPBELL**
Registration No. 37515
DIRECT: (615) 630-7715
(615) 256-8787, Ext. 115
ccampbell@bkblaw.com
Attorneys for the Defendants, The Cincinnati Insurance Company, The Cincinnati Casualty Company, and The Cincinnati Indemnity Company

21

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN  37228

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 6th day of July 2020, a true and correct copy of the foregoing  THE CINCINNATI DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) was filed electronically.  Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U. S. Mail.  Parties may access this file through the court's electronic filing system.

T. Roe Frazer II, Esquire
Patrick D. McMurtray, Esquire
Thomas Roe Frazer III, Esquire
Frazer, PLC
30 Burton Hills Blvd., Suite 450
Nashville, TN 37215

 s/ Curtis L. Campbell
**CURTIS L. CAMPBELL**

CLC: